UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
AT LAW AND IN ADMIRALTY

---

UNITED STATES OF AMERICA,

        Plaintiff,

        v.                                                    Case No. 12-C-1183

APPROXIMATELY $50,205.00 IN
UNITED STATES CURRENCY, *et al.*,

        Defendants.

---

### UNITED STATES' MOTION TO STAY CIVIL FORFEITURE CASE
### PURSUANT TO TITLE 18, UNITED STATES CODE, SECTION 981(g)

---

The Plaintiff, the United States of America, by its attorneys, James L. Santelle, United States Attorney for the Eastern District of Wisconsin, and Scott J. Campbell, Assistant United States Attorney, moves this Court to stay proceedings in this civil forfeiture case, other than Claimants' filing of an answer or a Rule 12 motion to dismiss the United States' proposed Third Amended Complaint, under Title 18, United States Code, Section 981(g) either for 120 days or, if a criminal case seeking forfeiture of any or all the defendant properties is brought against any claimant in this action within 120 days, until that criminal case is resolved.

In support of this motion, the United States respectfully states as follows:

**Background**

1. On January 11, 2013, the United States filed a Second Amended Verified Complaint for Civil Forfeiture *In Rem* against the defendant properties. The United States contends that the following defendants were used or intended to be used in exchange for controlled substances, or represent proceeds of trafficking in controlled substances, or were used or intended to be used to facilitate a violation of Title II of the Controlled Substances Act,

21 U.S.C. §§ 801, *et seq*., and are therefore subject to forfeiture to the United States of America pursuant to Title 21, United States Code, Section 881(a)(6):

    a.    Approximately $50,205.00 in United States currency,

    b.    One 2008 Hummer H2 bearing vehicle identification number (VIN) 5GRGN23898H102440,

    c.    One Colt AR-15 Carbine rifle,

    d.    One Draco-C pistol,

    e.    One Aimpoint Comp M4s rifle optic,

    f.    One iTac defense weapon mounted tactical light/laser,

    g.    One magnifier for rifle optics,

    h.    Approximately $65,027.00 in United States currency,

    i.    Assorted jewelry identified as one 18-carat white gold ladies Breguet Reine de Naples watch and one 18-carat white gold diamond pendant,

    j.    Approximately $44,307.54 in United States currency from JPMorgan Chase Bank N.A. account ending in 9132,

    k.    Approximately $137,132.07 in United States currency from JPMorgan Chase Bank N.A. account ending in 9124,

    l.    Approximately $218,816.79 in United States currency from a cashier's check originating from Wells Fargo Bank account ending in 1880,

    m.    Approximately $242,675.69 in United States currency from a cashier's check originating from Wells Fargo Bank accounts ending in 8782 and 2333,

    n.    Approximately $21,105.37 in United States currency from East West Bank account ending in 0778,

    o.    Approximately $10,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0778,

    p.    Approximately $10,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0885,

q. Approximately $126,538.63 in United States currency from East West Bank account ending in 0828,

r. Approximately $50,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0828,

s. Approximately $13,314.64 in United States currency from the East West bank account ending in 0869,

t. Approximately $181,812.70 in United States currency from the Bank of America account ending in 2345,

u. Approximately $45,003.17 in United States currency from the Bank of America account ending in 2329,

v. Approximately $53,103.25 in United States currency from the Metro Bank account ending in 8965,

w. Approximately $36,346.90 in United States currency from the Wells Fargo Bank account ending in 6316,

x. Approximately $70,403.61 in United States currency from Wells Fargo Bank account ending in 4256,

y. Approximately $154,696.20 in United States currency from the Wells Fargo Bank account ending in 9755,

z. Approximately $4,512.51 in United States currency from the Wells Fargo Bank account ending in 8653,

aa. Approximately $12,535.48 in United States currency from the Wells Fargo Bank account ending in 1416,

bb. Approximately $36,053.52 in United States currency from the Wells Fargo Bank account ending in 1600,

cc. Approximately $19,326.61 in United States currency from the Wells Fargo Bank account ending in 5873,

dd. Two DBF900 horizontal continuous band sealers,

ee. Approximately 18,978 pounds of damiana leaves,

ff. One Chicago electric chipper shredder 66910,

gg. One 2009 Syntron F-TO-C magnetic feeder with serial number GPMF49856, and

3

hh.   Approximately 3,425 pounds of damiana leaves.

2.   The United States contends that the defendant, one 2005 Infiniti FX35 bearing vehicle identification number (VIN) JNRAS08U65X103279, was used, or intended to be used, to transport, or to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*, and is therefore subject to forfeiture to the United States of America pursuant to Title 21, United States Code, Section 881(a)(4).

3.   The United States further contends that the following defendants were used, or intended to be used, in the manufacturing, compounding, processing, delivering, importing, or exporting of a controlled substance in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801, *et seq.*, and are therefore subject to forfeiture to the United States of America pursuant to Title 21, United States Code, Section 881(a)(2):

    a.   Two DBF900 horizontal continuous band sealers,

    b.   Approximately 18,978 pounds of damiana leaves,

    c.   One Chicago electric chipper shredder 66910,

    d.   One 2009 Syntron F-TO-C magnetic feeder with serial number GPMF49856, and

    e.   Approximately 3,425 pounds of damiana leaves.

4.   The United States further contends that the following defendants were involved in transactions in violation of the Money Laundering Control Act, 18 U.S.C. §§ 1956 and 1957, and are therefore subject to forfeiture by the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(A):

    a.   Approximately $44,307.54 in United States currency from JPMorgan Chase Bank N.A. account ending in 9132,

b. Approximately $137,132.07 in United States currency from JPMorgan Chase Bank N.A. account ending in 9124,

c. Approximately $218,816.79 in United States currency from a cashier's check originating from Wells Fargo Bank account ending in 1880,

d. Approximately $242,675.69 in United States currency from a cashier's check originating from Wells Fargo Bank accounts ending in 8782 and 2333,

e. Approximately $21,105.37 in United States currency from East West Bank account ending in 0778,

f. Approximately $10,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0778,

g. Approximately $10,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0885,

h. Approximately $126,538.63 in United States currency from East West Bank account ending in 0828,

i. Approximately $50,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0828,

j. Approximately $13,314.64 in United States currency from the East West bank account ending in 0869,

k. Approximately $181,812.70 in United States currency from the Bank of America account ending in 2345,

l. Approximately $45,003.17 in United States currency from the Bank of America account ending in 2329,

m. Approximately $53,103.25 in United States currency from the Metro Bank account ending in 8965,

n. Approximately $36,346.90 in United States currency from the Wells Fargo Bank account ending in 6316,

o. Approximately $70,403.61 in United States currency from Wells Fargo Bank account ending in 4256,

p. Approximately $154,696.20 in United States currency from the Wells Fargo Bank account ending in 9755,

5

q.  Approximately $4,512.51 in United States currency from the Wells Fargo Bank account ending in 8653,

r.  Approximately $12,535.48 in United States currency from the Wells Fargo Bank account ending in 1416,

s.  Approximately $36,053.52 in United States currency from the Wells Fargo Bank account ending in 1600, and

t.  Approximately $19,326.61 in United States currency from the Wells Fargo Bank account ending in 5873.

5. On or about January 28, 2013, Capital One Auto Finance, Inc. filed a petition for remission as to the defendant property, one 2008 Hummer H2, bearing vehicle identification number (VIN) 5GRGN23898H102440.

6. On or about February 15, 2013, Amy Wilhoite and John Wilhoite filed a claim (R. 58) to the following defendant properties:

a.  Approximately $10,205 of the approximately $50,205 in United States currency,

b.  One 2005 Infiniti FX35 bearing vehicle identification number (VIN) JNRAS08U65X103279,

c.  One Colt AR 15 Carbine rifle,

d.  One Draco-C pistol,

e.  One Aimpoint Comp M4s rifle optic,

f.  One iTac defense weapon mounted tactical light/laser,

g.  One magnifier for rifle optics,

h.  Approximately $12,535.48 in United States currency from Wells Fargo Bank account ending in 1416,

i.  Approximately $4,512.51 in United States currency from Wells Fargo Bank account ending in 8653, and

j.  Approximately $36,053.52 in United States currency from Wells Fargo Bank account ending in 1600.

On or about February 15, 2013, Claimants Amy Wilhoite and John Wilhoite also filed a Motion to Dismiss Second Amended Complaint and Alternative Motion for More Definite Statement. (R. 62). The United States' response to that motion to dismiss is due by April 16, 2013. (R. 94).

    7.    On or about February 15, 2013, 6 Degrees Marketing Group filed a claim (R. 56) to the following defendant properties:

    a.    One 2008 Hummer H2 bearing vehicle identification number (VIN) 5GRGN23898H102440,

    b.    Approximately $30,000 of the approximately $50,205 in United States currency, and

    c.    Approximately $154,696.20 in United States currency from Wells Fargo Bank account ending in 9755.

On or about February 15, 2013, Claimant 6 Degrees Marketing Group also filed a Motion to Dismiss Second Amended Complaint and Alternative Motion for More Definite Statement. (R. 62). The United States' response to that motion to dismiss is due by April 16, 2013. (R. 94).

    8.    On or about February 15, 2013, Synergy Botanicals Co., LLC, filed a claim (R. 57) to the following defendant properties:

    a.    Approximately $10,000 of the approximately $50,205 in United States currency,

    b.    Approximately $19,326.61 from Wells Fargo Bank account ending in 5873,

    c.    Two DBF900 horizontal continuous band sealers,

    d.    Approximately 18,978 pounds of damiana leaves,

    e.    One Chicago electric chipper shredder 66910,

    f.    One 2009 Syntron F-TO-C magnetic feeder with serial number GPMF49856, and

    g.    Approximately 3,425 pounds of damiana leaves.

On or about February 15, 2013, Claimant Synergy Botanicals Co., LLC, also filed a Motion to Dismiss Second Amended Complaint and Alternative Motion for More Definite Statement. (R. 62). The United States' response to that motion to dismiss is due by April 16, 2013. (R. 94).

    9.    On or about February 19, 2013, Christopher Brett Hinton filed a claim (R. 63) to the following defendant properties:

    a.    Approximately $10,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0778,

    b.    Approximately $10,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0885,

    c.    Approximately $50,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0828,

    d.    Approximately $21,105.37 in United States currency from East West Bank account ending in 0778,

    e.    Approximately $126,538.63 in United States currency from East West Bank account ending in 0828, and

    f.    Approximately $13,314.64 in United States currency from East West Bank account ending in 0869.

On or about March 27, 2013, Claimant Christopher Brett Hinton filed a Motion to Dismiss Second Amended Complaint. (R. 81). The United States' response to that motion to dismiss is due by April 17, 2013.

    10.    On or about February 22, 2013, JV Imports, LLC filed a claim (R. 67) to the following defendant properties:

    a.    Approximately $126,538.63 in United States currency from East West Bank account ending in 0828,

    b.    Approximately $50,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0828, and

    c.    Approximately $13,314.64 in United States currency from East West Bank account ending in 0869.

On or about March 27, 2013, Claimant JV Imports, LLC filed a Motion to Dismiss Second Amended Complaint. (R. 81). The United States' response to that motion to dismiss is due by April 17, 2013.

      11.      On or about February 22, 2013, J&B Packaging, LLC filed a claim (R. 66) to the following defendant properties:

      a.      Approximately $21,105.37 in United States currency from East West Bank account ending in 0778,

      b.      Approximately $10,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0778, and

      c.      Approximately $10,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0885.

On or about March 27, 2013, Claimant J&B Packaging, LLC filed a Motion to Dismiss Second Amended Complaint. (R. 81). The United States' response to that motion to dismiss is due by April 17, 2013.

      12.      On or about March 1, 2013, Jia Zou filed a claim (R. 70) to the following defendant properties:

      a.      Approximately $65,027.00 in United States currency,

      b.      Approximately $21,105.37 in United States currency from East West Bank account ending in 0778,

      c.      Approximately $10,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0778,

      d.      Approximately $10,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0885,

      e.      Approximately $126,538.63 in United States currency from East West Bank account ending in 0828,

      f.      Approximately $50,000.00 in United States currency from a cashier's check originating from East West Bank account ending in 0828, and

  g. Approximately $13,314.64 in United States currency from East West Bank account ending in 0869.

On or about March 21, 2013, Claimant Jia Zou filed a Motion to Dismiss and Alternative Motion for More Definite Statement. (R. 80). The United States' response to that motion to dismiss is due by April 16, 2013. (R. 94).

  13. On or about March 1, 2013, Hong Yong Zou and Yi Zhou filed a claim (R. 71) to the following defendant properties:

    a. Approximately $65,027.00 in United States currency,

    b. Assorted jewelry identified as one 18-carat white gold ladies Breguet Reine de Naples watch and one 18-carat white gold diamond pendant,

    c. Approximately $53,103.25 in United States currency from MetroBank account ending in 8965,

    d. Approximately $36,346.90 in United States currency from Wells Fargo Bank account ending in 6316, and

    e. Approximately $70,403.61 in United States currency from Wells Fargo Bank account ending in 4256.

On or about March 21, 2013, Claimants Hong Yong Zou and Yi Zhou filed a Motion to Dismiss and Alternative Motion for More Definite Statement. (R. 80). The United States' response to that motion to dismiss is due by April 16, 2013. (R. 94).

  14. On or about April 8, 2013, Claimant Brothers Wholesale filed claims (R. 85; R. 86; R. 89; R. 90) to the following defendant properties:

    a. Approximately $45,003.17 in United States currency from Bank of America account ending in 2329,

    b. Approximately $181,812.70 in United States currency from Bank of America account ending in 2345,

    c. Approximately $137,132.07 in United States currency from JPMorgan Chase Bank N.A. account ending in 9124, and

        d.        Approximately $44,307.54 in United States currency from JPMorgan Chase Bank N.A. account ending in 9132.

15.        On or about April 8, 2013, Claimant Alec Nicholas Consulting filed a claim (R. 88) to the following defendant property: Approximately $218,816.79 in United States currency from a cashier's check originating from Wells Fargo Bank account ending in 1880.

16.        On or about April 8, 2013, Claimant Purity Brokers filed a claim (R. 87) to the following defendant property: Approximately $242,675.69 in United States currency from a cashier's check originating from Wells Fargo Bank accounts ending in 8782 and 2333.

17.        On April 16, 2013, Claimants Brothers Wholesale, Purity Brokers, and Alec Nicholas Consulting filed a Motion to Dismiss and Alternative Motion for More Definite Statement. (R. 95).

18.        On April 16, 2013, the United States moved for leave to file a Third Amended Complaint. The United States' proposed Third Amended Complaint adds no new defendant properties and alleges no additional forfeiture theories. Rather, it expressly alleges that Claimants' alleged controlled substance violations, involving controlled substance analogues of a Schedule I controlled substance, were knowing and intentional. In addition, the proposed verifying affidavit contains additional facts concerning Claimants' knowledge and intent, among other things.

**Facts**

19.        As set forth in the affidavit of Ann Marie Phillippi in support of this motion, submitted under seal pursuant to 18 U.S.C. § 981(g)(5), the United States Attorney's Office for the Eastern District of Wisconsin and federal investigative agencies are currently conducting a criminal investigation into, among other things, whether John Wilhoite, Amy Wilhoite, 6 Degrees Marketing Group, Synergy Botanicals Co., LLC, Christopher Brett Hinton,

JV Imports, LLC, J&B Packaging, LLC, Jia Zou, Hong Yong Zou, Yi Zhou, Brothers Wholesale, Alec Tundidor, Alec Nicholas Consulting, and Purity Brokers in this action (hereinafter collectively referred to as the "Claimants") conspired to knowingly and intentionally traffic in, or knowingly and intentionally trafficked in, illegal controlled substances or analogues of a Schedule I controlled substance, or both, in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 802(32), 813, 841, and 846, and conspired to engage in, and knowingly engaged in, financial transactions in violation of the Money Laundering Control Act, 18 U.S.C. §§ 1956 and 1957.

## Argument

20. The United States submits that proceeding with any discovery, or any evidentiary hearing in this civil forfeiture case, would interfere with the United States' ongoing criminal investigation by giving the Claimants the opportunity to prematurely ascertain the details of the ongoing criminal investigation and any criminal prosecution that might result from that investigation.

21. "Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the government to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1).

22. The criminal investigation described above is "related" to this civil forfeiture case in that both involve the same parties and a common core factual question, whether the Claimants conspired to knowingly and intentionally traffic in, or knowingly and intentionally trafficked in, illegal controlled substance analogues of a Schedule I controlled substance, or both, in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 802(32), 813, 841, and 846, and conspired to engage in, and knowingly engaged in, financial transactions in violation of the

Money Laundering Control Act, 18 U.S.C. §§ 1956 and 1957. *See* 18 U.S.C. § 981(g)(4) (defining "related criminal investigation"); *United States v. All Funds on Deposit in Suntrust Account Number XXXXXXXX8359*, 456 F. Supp. 2d 64, 65 (D.D.C. 2006) ("Where a criminal investigation and a civil forfeiture action have common facts, similar alleged violations and some common parties, the actions are clearly related.").

23. Section 981(g)(1) does not require "a particularized showing of prejudice or specific harm; rather, all that the Court must determine is whether the civil discovery will interfere with the criminal investigation." *United States v. One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d 1180, 2011 WL 5966383 at *3 (C.D. Cal. Nov. 17, 2011). Indeed, "more specific disclosure of prejudice through detailed evidentiary support will only result in the very prejudice to the criminal proceeding that the Government seeks to avoid." *Id.* Accordingly, courts have "routinely issued Section 981(g)(1) stays on the basis of the Government's allegations of *likely* prejudice to the criminal proceeding caused by the civil discovery." *Id.* (emphasis in original).

24. It is well settled that where, as here, "civil discovery would subject the government's criminal investigation to 'early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding,' a stay should be granted." *E.g.*, *All Funds on Deposit in Suntrust Account Number XXXXXXXX8359*, 456 F. Supp. 2d at 66 (quoting *United States v. One Assortment of Seventy-Three Firearms*, 352 F.Supp.2d 2, 4 (D. Me. 2005); *United States v. 2009 Dodge Challenger*, 2011 WL 6000790, * (D. Or. Nov. 30, 2011) (granting stay on ground that civil discovery would subject government's investigation to broader and earlier discovery than would occur in the related criminal proceeding); *United States v. Real Property…10 Table Bluff Road*, 2007 WL 911849, *2 (N.D. Cal. 2007) (same).a stay should be granted." *E.g.*, *All Funds on Deposit in Suntrust Account Number XXXXXXXX8359*, 456 F.

13

Supp. 2d at 66 (quoting *United States v. One Assortment of Seventy-Three Firearms*, 352 F.Supp.2d 2, 4 (D. Me. 2005); *United States v. 2009 Dodge Challenger*, 2011 WL 6000790, * (D. Or. Nov. 30, 2011) (granting stay on ground that civil discovery would subject government's investigation to broader and earlier discovery than would occur in the related criminal proceeding); *United States v. Real Property...10 Table Bluff Road*, 2007 WL 911849, *2 (N.D. Cal. 2007) (same).

25. Proceeding with discovery or an evidentiary hearing in this civil forfeiture case would interfere with the United States' ability to conduct its related, ongoing criminal investigation of the Claimants by giving the Claimants the opportunity to prematurely ascertain discovery directly related to that criminal investigation. Such discovery could potentially disclose, among other things, the direction and scope of the criminal investigation as well as the witnesses interviewed and evidence obtained to date in the course of the criminal investigation, even before any criminal charges are brought.

26. Proceeding with the fact issues raised in the motions to dismiss that the Claimants have filed in this civil forfeiture matter would likewise prejudice the United States' ability to complete its investigation and prosecution of the criminal case without having to provide discovery materials relating to the criminal case prematurely.

27. The core contention of each of the Claimants' motions to dismiss is that the Federal Analogue Act, 21 U.S.C. § 802(32), is unconstitutionally vague as applied to the synthetic cannabinoid compounds at issue in this civil forfeiture case, 1-Pentyl-3-(2,2,3,3-tetramethylcyclopropoyl) indole ("UR-144") and 1-(5-Fluoropentyl)-3-(2,2,3,3-tetramethylcyclopropoyl) indole ("XLR-11"), which are also the main synthetic cannabinoid compounds at issue in the related criminal investigation. The Claimants argue that a person of ordinary intelligence could not reasonably be on notice that UR-144 and XLR-11 might be

14

considered to be analogues of the Schedule I controlled substance JWH-018 under 21 U.S.C. § 802(32).

28. In support of that argument, the claimants contend that UR-144 and XLR-11 are not analogues of JWH-018 within the meaning of Section 802(32) based on their *factual* arguments that UR-144 and XLR-11: (1) do not have a chemical structure that is substantially similar to that of JWH-018, and (2) do not have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of JWH-018. *See, e.g.*, Motion to Dismiss Second Amended Complaint and Alternative Motion for More Definite Statement filed by John and Amy Wilhoite, 6 Degrees Marketing Group, and Synergy Botanicals Co., LLC (R. 62) at 6-20.

29. For that reason, each of the Claimants has also requested an evidentiary hearing on their argument that the Federal Analogue Act is unconstitutional as applied to UR-144 and XLR-11. *See id.* at 23 (requesting evidentiary hearing); *see also* Motion to Dismiss Second Amended Complaint and Alternative Motion for More Definite Statement filed by Brothers Wholesale, Purity Brokers, and Alec Nicholas Consulting (R. 95) at 2 ("Claimants further join all co-claimants in requesting an evidentiary hearing on this matter.").

30. Such an evidentiary hearing, or even the submission of affidavits on the underlying factual issue of whether UR-144 and XLR-11 are analogues of JWH-018, would require the United States to present its experts' testimony in this forfeiture matter – on an issue that would be one of the key factual issues in the criminal trial – before the United States would be given the opportunity to call its expert witnesses to testify on this same issue at any criminal trial.

15

Case 2:12-cv-01183-JPS   Filed 04/16/13   Page 15 of 17   Document 97

31. Thus, the consideration of the Claimants' argument that the Federal Analogue Act is unconstitutional as applied to UR-144 and XLR-11, in this civil forfeiture matter, before the criminal investigation is completed and any criminal charges are brought or resolved, would expose the United States' trial strategy on this vitally important analogue issue to being revealed prematurely and would thereby inhibit the United States' ability to present its criminal case most effectively at trial.

32. A stay would also conserve judicial resources. The United States represents that, if any or all of the Claimants are charged with manufacturing and distributing controlled substance analogues of a Schedule I controlled substance, and any or all the defendant assets had a nexus with any such charged offense, the United States intends to seek forfeiture of those assets in the criminal case. The outcome of any such criminal prosecution will likely materially advance, and might moot, this civil forfeiture matter. *See United States v. $2,067,437.08 in U.S. Currency*, 2008 WL 238514, *6 (E.D. Tex. 2008) (granting stay not only because civil discovery could adversely affect prosecution of pending criminal case but also because it would be "more efficient and practical to adjudicate the alleged violation" underlying the civil forfeiture matter in the related pending criminal case).

33. Staying all proceedings in this case, including any pretrial motion practice going beyond a proper Rule 12 motion challenging the legal sufficiency of the United States' civil forfeiture complaint, for the time requested would conserve judicial resources by sparing the Court and the parties from having to needlessly address discovery and pretrial motion issues going beyond the sufficiency of the complaint in the event that the alleged violation or violations underlying this civil forfeiture matter are to be resolved in a criminal case.

WHEREFORE, the United States requests that all proceedings in this civil forfeiture case, other than Claimants' filing of an answer or a Rule 12 motion to dismiss the United States' proposed Third Amended Complaint, be stayed for either 120 days, or if a criminal case seeking forfeiture of any or all the defendant properties is brought against the Claimants within 120 days, until that criminal case is resolved.

A proposed order is attached.

Respectfully submitted at Milwaukee, Wisconsin, this 16th day of April, 2013.

                         JAMES L. SANTELLE
                         United States Attorney

By:

                         s/SCOTT J. CAMPBELL
                         Assistant United States Attorney
                         Scott J. Campbell Bar Number: 1017721
                         Attorney for Plaintiff
                         Office of the United States Attorney
                         Eastern District of Wisconsin
                         517 East Wisconsin Avenue, Room 530
                         Milwaukee, Wisconsin 53202
                         Telephone: (414) 297-1700
                         Fax: (414) 297-1738
                         E-Mail: scott.campbell@usdoj.gov